UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ROSA M. WOOD )
)
V. ) NO. 2:10-CV-132
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation regarding the administrative denial of plaintiff's claims for supplemental security income and disability insurance benefits under the Social Security Act. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 8 and 16].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 29 years of age at the time her applications were denied by an Administrative Law Judge ["ALJ"] following a hearing She has a 9th grade or "limited" education. She has past relevant work experience as a waitress which is light and unskilled. She alleges severe impairments from multiple sclerosis with resultant fatigue and a mental impairment.

Her medical history is set forth in her brief as follows:

> The records of Dr. Gamal S. Boutros contained at Exhibit 1F appear to be incomplete, as they include lab work and testing from August 9, 2005, September 8, 2005, and August 22, 2006, with no corresponding office notes. The only office notes which has been included is from December 15, 2005, which notes Plaintiff's problems of bilateral feet drawing and pain in her feet. Dr. Boutros suspected Plaintiff had restless leg syndrome and may also have some nutritional iron deficiency. Dr. Boutros noted that he would order a polysonogram and wanted to see electrolyte; he would wait until Plaintiff delivered her baby to get a spinal tap for further investigation because she may have MS; and he could not rule out the possibility that her symptoms may be related to a lesion on her MRI with abnormal signal intensity on the right coronal raidata and the left peritrigonal and bilateral centrum semiovale suspicious for inactive MS (Tr. 153-183).
> 
> Plaintiff received treatment at Centerpointe Medical Clinic from June 14, 2005 through December 26, 2006. Conditions and complaints addressed during this time include chronic low back pain, GERD, insomnia, anxiety, malaise, fatigue, chronic neck pain, multiple sclerosis, weakness in the arms, occasional tremors, blurred vision secondary to multiple sclerosis, transient numbness in the legs and arms, decreased muscle tone in the arms and legs, foot cramps, cervical spine stiffness, urinary tract infection, and muscle spasms (Tr. 184-205). On June 20, 2005, MRI of the brain revealed foci of abnormal increased white matter signal intensity throughout the corona radiate, left peritrigonal, and bilateral semiovale white matter regions, noted to be quite unusual for Plaintiff's age and suspicious for multiple sclerosis plaque lesions. Other causes of demyelinating disease, including small vessel vascular disease or toxic demyelination, could not be excluded (Tr. 191).
> 
> Plaintiff underwent consultative exam by Dr. Edward E. Latham on February 19,

2007. Plaintiff's judgment as to what to do in a public crisis was poor; her proverb interpretation was abstract; and she was estimated to be low average in her cognitive capabilities. Plaintiff reported that she has feelings of worthlessness, is tired and aggravated throughout the day, worries about everything, avoids going out to shop because there are too many people and it is too noisy, dreams about her husband and children dying, avoids conflict whenever possible, and generally gives in to what others want rather than confront them. In summary, Dr. Latham noted Plaintiff shows evidence of having a chronic emotional disturbance. The diagnosis was generalized anxiety disorder. Dr. Latham opined Plaintiff appears to be able to understand, retain, and follow simple instructions and do routine, repetitive tasks; her attention/concentration skills appear to be sufficient for simple tasks; her ability to relate interpersonally appears unimpaired; and her ability to handle everyday stressors appears to be mildly impaired (Tr. 206-208).

Plaintiff underwent consultative exam by Dr. Karl W. Konrad on March 6, 2007. Plaintiff reported a four month history of problems with anxiety and multiple sclerosis which causes her to have a hard time getting out of bed on some days and to be tired all the time when she does get up. In summary, Dr. Konrad noted Plaintiff states that she has multiple sclerosis getting worse over the past year; she also suffers from anxiety over the past four months; and physical exam is remarkable for hepatomegaly. Dr. Konrad opined Plaintiff has no impairment related physical limitations (Tr. 209-211).

On March 13, 2007, a reviewing state agency physician opined Plaintiff can lift/carry a maximum of 50 pounds occasionally, 25 pounds frequently; can stand/walk for a total of about six hours in an eight-hour workday; and can sit for a total of about six hours in an eight-hour workday (Tr. 212-219). On July 4, 2007, a second reviewing state agency physician offered an identical assessment (Tr. 238-245).

Plaintiff continued treatment at Centerpointe Medical Clinic from January 25, 2007 through March 26, 2007, during which time she was suffering chronic low back pain and spasms, multiple sclerosis, chronic neck pain, arthralgias, anxiety, insomnia, all over body pain, and bilateral foot pain (Tr. 220-222).

On April 5, 2007, a reviewing state agency psychologist opined Plaintiff's mental impairment(s) are not severe (Tr. 223-236). On June 26, 2007, a second reviewing state agency psychologist affirmed this assessment as written (Tr. 237).

Plaintiff continued treatment at Centerpointe Medical Clinic from June 7, 2007 through January 4, 2008, due to chronic low back pain, chronic neck pain, sleep disturbance, multiple sclerosis, headaches, arthralgias, bilateral leg pain, heaviness in the arms and legs, anxiety, and upper respiratory infection (Tr. 251-255).

Additional records were received from Dr. Boutros, which were not included with those previously sent (Tr. 271-280, 304-312). Plaintiff first presented on August 9, 2005, at which time is was noted that she had a cyst and had multiple sclerosis. Plaintiff was symptomatic and complaining of numbness and tingling in the feet and legs; staying weak, sleepy, and tired all the time; diffuse shoulder pain, back pain, and intrascapular pain; and falling and losing her balance secondary to leg numbness. The assessment was T2 signal abnormality on MRI, suspicious for multiple sclerosis; family history of multiple sclerosis; and pregnancy in a lady suspected to be having multiple sclerosis (Tr. 275-276). During continued treatment by Dr. Boutros from August 22, 2006 through October 9, 2006, Plaintiff was suffering neck pain, tightening in the thighs, difficulty

3

getting up in the morning, weakness, multiple sclerosis, diabetes mellitus, and leg pain and discomfort (Tr. 306-312). The next note from Dr. Boutros is dated December 17, 2007, and notes spinal tap with oligoclonal bands positive for multiple sclerosis. Plaintiff continued to complain of weakness, tightening in her thighs, and difficulty getting up in the morning (Tr. 271-272).

[Doc. 9, pgs. 2-5].

At the administrative hearing, the ALJ had a vocational expert attend the hearing, but elected not to question him.

In his hearing decision, the ALJ found that the plaintiff had a "severe combination of impairments" of multiple sclerosis with fatigue. He found, based upon the psychological evaluation by Dr. Latham, that the plaintiff had no more than mild mental limitations and thus found that she did not have a severe mental impairment. (Tr. 23). He found that the plaintiff's complaints of pain and other symptoms were not bourne out by the objective medical evidence. He found that her usual activities were consistent with "at least a residual functional capacity for light work." He found that her allegations of disabling pain and other symptoms were not credible. He found that she had the residual functional capacity to perform the full range of medium work. Since her past relevant work as a waitress was light work, he found that she could return to it. He stated that he based this finding on "credible vocational expert testimony."[1] He also found that she would not be disabled under Rule 202.18 of the Medical-Vocational Guidelines, the "grid." That section states that a person who can perform the full range of light work who has a limited education and is, like plaintiff, a "younger individual" is not disabled. Accordingly, the ALJ found that she was not disabled. (Tr. 24-25).

---

[1]As previously stated, there was no vocational expert testimony at the hearing.

Plaintiff asserts that the ALJ's finding of her residual functional capacity was not supported by substantial evidence in that he did not properly evaluate the effect of her fatigue on her ability to perform work, and that he erred in not finding a severe mental impairment and in not taking into account Dr. Latham's opinions regarding diagnoses and restrictions of function. Plaintiff also asserts that the ALJ's determination that the plaintiff could return to her past relevant work as a waitress is not supported by substantial evidence because he did not adequately analyze "the physical and mental demands of the claimant's past work." Also in this regard he points out that while the ALJ stated there was "credible vocational expert testimony" to support his findings, no vocational expert testimony was taken at the hearing.

With respect to the argument that the ALJ did not properly take into consideration the plaintiff's asserted fatigue, plaintiff appears to be asserting that since she has multiple sclerosis, and she subjectively complains of totally debilitating fatigue and pain, she is disabled. A *diagnosis* of virtually any disease does not equate to a mandated finding of disability. The cases cited by the plaintiff stand for the proposition that "multiple sclerosis **can** be disabling nothwithstanding normal activity in periods of remission." *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1438-39 (9th Cir. 1985). (Emphasis added). The plaintiff in *Estes* was wheelchair bound and there was "no dispute [that she was] disabled by multiple sclerosis" at the time the decision was rendered regarding when she became disabled. *Id.*, at 1438. Being undisputedly disabled and attempting to determine the onset date is a different question from whether a plaintiff *is* yet disabled. In *Parish v. Califano*, 642 F.2d 188 (6th Cir. 1981), which was relied upon by the *Estes* court, the plaintiff had clear observable medical evidence of problems walking and maintaining balance and observable

5

sensory and motor deficiencies documented in the medical records. In both *Estes* and *Parish*, the plaintiffs were hospitalized for intensive treatment of their multiple sclerosis.

In the present case however, Dr. Boutros, the treating physician for plaintiff's disease, did not set any restrictions on her activities. More tellingly, his treatment notes indicate normal muscle tone and strength, normal ranges of motion, and normal deep tendon reflexes. (Tr. 272, 306-07, 312, 318). These examinations were in 2007 and 2008, the last being only 3 months before the ALJ rendered his decision. The ALJ was well aware of Dr. Boutros's findings in this regard. Also, Dr. Konrad performed an extensive examination. He was aware of the plaintiff's MS. He noted her normal range of motion, strength, and balance. He opined she had no limitations. (Tr. 209-11).

The ALJ had ample medical evidence from a physical standpoint to support his finding that she was capable of medium work, and that her subjective complaints were not bourne out by her activities and medical observations of her own physical condition. In fact, there is not medical evidence to the contrary. Neither Dr. Boutros nor any other examining physician has told the plaintiff not engage in certain activities. No one has submitted a medical assessment even suggesting that she cannot perform at least medium work from a physical standpoint.

With regard to the finding of no mental impairment, Dr. Latham found nothing beyond mild limitations. Even with these mild limitations, Dr. Latham opined that she could accept simple instructions and perform routine, repetitive tasks. (Tr. 206-08). In the opinion of this Court, a "mild" mental limitation does not necessitate a finding of a severe mental impairment, particularly where there was absolutely no history of mental health treatment or

strong complaints. Her mild anxiety symptoms, if anything, appear to be a result of her uncertainty over whether she would be found disabled and awarded benefits.

Finally plaintiff asserts that the ALJ did not factor in Dr. Latham's findings regarding being her mild impairments into his finding that she could return to her past relevant work as a waitress. Also, she claims the reference to "credible vocational expert testimony" when no VE testified taints the decision. The Court must agree with the commissioner and ask "what specific aptitude to work as a waitress" has Dr. Latham, or anyone else, indicated plaintiff is lacking? [Doc. 17, pg. 13]. The ability to understand and carry out at least simple instructions and perform repetitive tasks would appear to exhaust the universe of mental requirements to work as a competent waitress. Also, the burden of going forward with evidence remains with the plaintiff through Step Four of the sequential evaluation process. Here, there is simply nothing beyond Dr. Latham's opinion, which is consistent with the demands of plaintiff's past relevant work.

The Commissioner argues that the reference in the ALJ's opinion to "credible vocational expert testimony" is a reference to how her past relevant work is actually and generally performed. The Court is not certain if the ALJ was referring to the Dictionary of Occupational Titles or whatever. However, the conclusion of the ALJ is factually supported and if this be error, it is harmless.

It is not necessary to address the assertion that the alternative Step Five finding that the plaintiff was disabled under the "grids" was unsupported. However, the 29-year old plaintiff certainly meets the age, educational and vocational requirements of Rule 202.18, and there is substantial evidence to support the RFC itself.

7

It is respectfully recommended that the plaintiff's Motion for Summary Judgment [Doc. 8] be DENIED and that the defendant Commissioner's Motion for Summary Judgment [Doc. 16] be GRANTED. [2]

Respectfully submitted:

 s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).